# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM SHARPE,<br><br>                    Petitioner,<br><br>v.<br><br>SCOTT KERNAN, Secretary,<br><br>                    Respondent. | Case No.: 16cv1947-MMA (AGS)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**<br><br>**[Doc. No. 4]** |

## INTRODUCTION

Petitioner Adam W. Sharpe, ("Petitioner"), a state prisoner proceeding *pro se*, initiated this action by constructively filing a Petition for Writ of Habeas Corpus pursuant to Title 28 U.S.C. § 2254. Doc. No. 1. In the operative First Amended Petition ("FAP"), Petitioner challenges a decision by the prison's senior disciplinary hearing officer finding him guilty of constructive possession of two deadly weapons and imposing a 360-day forfeiture of credits and other penalties. *See* Doc. No. 4 ("FAP") at 1, 21-23.[1] The Court has reviewed the FAP, the Answer and Memorandum of Points and Authorities in

---

[1] Page numbers for docketed materials cited in this Order refer to those imprinted by the court's electronic case filing system.

1

Support of the Answer [Doc. Nos. 11 ("Ans."), 11-1 ("Ans. Mem.")], the Traverse [Doc. No. 14 ("Trav.")], and all supporting documents submitted by the parties. For the reasons discussed below, the Court **DENIES** the FAP without holding an evidentiary hearing and **DECLINES** to issue a Certificate of Appealability.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 24, 2014, Correctional Officer Leyva conducted a random cell search of the cell jointly occupied by Petitioner and Inmate Booker. Doc. No. 11-2 at 14. Officer Leyva discovered two "brown paper bags that were inside one another located on the floor next to the lockers." *Id.* He "pulled the bags apart" and found "cardboard in the bottom of the outside bag." *Id.* Officer Leyva "removed the cardboard from the bag and discovered a long round object wrapped in clear plastic on one half and masking tape on the other half." *Id.* When he removed the masking tape portion, he noticed "it was a cover sleeve for an Inmate manufactured weapon made of a metal rod sharpened to a point measuring 5 ¼ in length by ¼ in width with a handle made out of clear plastic." *Id.* Officer Leyva also "found a cloth right next to the Inmate manufactured weapon that [he] had just found." *Id.* He "picked up the cloth and unrolled the cloth and found another Inmate manufactured weapon made out of metal sharpened to a point measuring 2 ¾ in length by ½ in width with no handle." *Id.* Officer Leyva reported that "[b]oth weapons were readily accessible to both inmates" and he "immediately took possession of the inmate manufactured weapons and secured them" on his person. *Id.* Thereafter, Petitioner received a Rules Violation Report ("RVR") for Possession of an Inmate Manufactured Deadly Weapon. *Id.*

On October 4, 2015, Correctional Officer Olivo, the assigned Investigative Employee, interviewed Petitioner. *Id.* at 15, 18. Petitioner handed Officer Olivo a list of questions to ask witnesses at the upcoming hearing for the RVR. *Id.* at 18. Pursuant to his questions, Inmate Booker reported that he received both the weapons on July 24, 2014 "around the hours of 9:30 a.m. and 10:00 a.m.," and that Petitioner "did not have any knowledge at all" of the weapons "[b]ecause he wasn't around at the time [Inmate

Booker] came in possession of the weapons." *Id.* Petitioner also submitted questions to ask his work supervisor, Carpenter Jesse Marquez ("Marquez"), but the Senior Hearing Officer ("SHO") deemed Marquez's answers irrelevant "for reasons not provided." FAP at 7; Doc. No. 11-2 at 18. Petitioner asserts that Marquez would have verified that Petitioner "was at work when [Officer Leyva] obtained the weapon[s]." Doc. No. 11-2 at 11.

On October 17, 2015, Petitioner appeared before Correctional Lieutenant SHO E. Uribe for adjudication of the RVR charging him with possession of inmate manufactured deadly weapons. Doc. No. 11-2 at 15. Petitioner plead not guilty to the charges and made the following statement: "I was at work for 7 hours up until the point where they found it. I was gone for 7 hours, [m]y Co-Defendant admitted it was his and he admitted I had no knowledge of it." *Id.* Inmate Booker and Marquez were witnesses at the hearing and Petitioner indicated that witness questions and answers were provided in the interview conducted by Officer Olivo. *See id.* at 16.

SHO Uribe found Petitioner guilty for the specific act of Possession of an Inmate Manufactured Deadly Weapon based on the preponderance of evidence presented at the hearing, including Officer Leyva's written RVR and "[i]nformation contained in incident package #CAL-FC3-14-07-0354." *Id.* at 16-17. In support, SHO Uribe noted the following:

> It is the [SHO's] belief that [Petitioner] is guilty of this [RVR] for the specific act of "Possession of an inmate manufactured deadly weapon". [sic] The finding of guilt, of [Petitioner], is based upon the weapon being discovered inside of paper bags that were located on the floor in a common area. It is the responsibility of both inmates assigned to the cell to ensure that no contraband enters the cell. The weapons were readily accessible to both inmates and not in any one inmate's assigned area. The discovery of two weapons within the cell also makes it unlikely that [Petitioner] had no knowledge of the weapons. In the [interview], inmate BOOKER accepted ownership of the weapons and indicated that he had received them earlier that day around 0930 and 1000 hours. In Correctional Sergeant[] C. Imada's 837C Report he indicates that [Petitioner] had been released to go to medical clinic indicating that [Petitioner] came out from his cell. The concept of constructive possession

3

pursuant to California Code of Regulations, Title 15, section 3006(a) holds the appellant liable for contraband contained within the area of his control. It is the SHO opinion that [Petitioner] was aware of weapons being inside of the cell and that it was his responsibility to ensure that his assigned area was free from contraband. Based on the above mentioned facts and with evidence presented during the hearing [Petitioner] is being found guilty of "Possession of an inmate manufactured weapon". [sic]

*Id.*

The incident was reported to the Imperial County District Attorney's Office, which initially "accepted the case for prosecution." FAP at 6; *see* Doc. No. 11-2 at 13. However, in September 2015, the Imperial County District Attorney's Office dismissed the case. Doc. No. 11-2 at 12-13, 15. Petitioner appealed the SHO's finding on November 1, 2015, arguing that the finding of guilt should be overturned as a result of the Imperial County District Attorney's Office's dismissal, insufficiency of evidence, and failure to present Marquez's testimony. *Id.* at 8-10. Petitioner's appeal was "screened out" on November 3, 2015. *Id.* at 9.

On January 4, 2016, Petitioner sought collateral review of his disciplinary conviction and loss of credits in the Imperial County Superior Court. Doc. No. 11-2, Exhibit 1. The Superior Court denied his petition on January 26, 2016. Doc. No. 11-2, Exhibit 4. Petitioner then constructively filed a habeas petition in the California Court of Appeal on February 18, 2016, which was denied on March 14, 2016. Doc. No. 11-2, Exhibits 2, 5. On March 29, 2016, Petitioner constructively filed a habeas petition in the California Supreme Court. Doc. No. 11-2, Exhibit 3. That petition was denied on May 25, 2016. Doc. No. 11-2, Exhibit 6. On July 18, 2016, Petitioner constructively filed a Petition for Writ of Habeas Corpus in this district. Doc. No. 1. After the Court dismissed his case without prejudice, Petitioner filed the FAP presently being considered by the Court. *See* Doc. No. 2; FAP.

## SCOPE OF REVIEW

Title 28 of the United States Code, section 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The FAP was filed after enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law if the state court "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law, or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision is an "unreasonable application" of clearly established federal law where the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "[A] federal habeas court may not issue [a] writ simply because the court concludes in its independent judgment that the relevant state-court

5

decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be *objectively unreasonable*." *Id.* at 75-76 (emphasis added) (internal quotation marks and citations omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." *Williams*, 529 U.S. at 412.

Habeas relief also is available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *Wood v. Allen*, 558 U.S. 290, 293 (2010). A state court's decision will not be overturned on factual grounds unless this Court finds that the state court's factual determinations were objectively unreasonable in light of the evidence presented in state court. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *see also Rice v. Collins*, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable).

## DISCUSSION

Petitioner raises two claims in his FAP. FAP at 6-7. First, Petitioner contends there was insufficient evidence to support the disciplinary hearing finding him guilty of possession of two deadly weapons. FAP at 6. Second, Petitioner argues that he was denied his due process right to present evidence showing that he was at work on the day of the search that led to discovery of the weapons. *Id.* at 7. Respondent argues both claims must be denied because Petitioner has failed to establish the state court's decision was contrary to, or an unreasonable application of, clearly established law. Ans. Mem. at 2-7. Respondent further contends that Petitioner fails to state a federal claim for relief as to his second claim. *Id.* at 2.

A. *Sufficiency of the Evidence*

Petitioner's first claim asserts that "[p]rison officials violated [P]etitioner's due process rights by finding him guilty of [a] Rules Violation without any evidence that it believed would rationally permit the findings." FAP at 6. Specifically, he contends that

6

he had no knowledge of the two weapons and had not been in his cell since his cellmate acquired the weapons. *Id.* Accordingly, he asserts that he cannot be guilty of constructively possessing the weapons. *Id.* Respondent contends that the state appellate court appropriately determined that Petitioner's guilty finding was based on "some evidence." Ans. Mem. 4-6.

The Court will look through the silent denial of this claim by the state supreme court to the last reasoned state court decision to address the claim, the state appellate court order denying habeas relief states:

> [Petitioner] is not entitled to habeas corpus relief. "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." (*Superintendent v. Hill* (1985) 472, U.S. 445, 455.) The report of a correctional officer that the weapons were found on the floor of [Petitioner's] prison cell in an area readily accessible to both inmates constitutes "some evidence" he committed the disciplinary violation. [Petitioner's] "reliance on the evidence that supports his assertion not to have known about the [weapons], such as his cellmate's acknowledgement of ownership and [Petitioner's] own claim of innocence, does not change the analysis under *Hill*. *Hill* emphasizes that the reviewing court is not to engage in an 'examination of the entire record' or 'weighing of the [conflicting] evidence.' [Citation.] Rather, the narrow role assigned to the reviewing court is solely to determine whether there was '*any evidence* in the record that *could support* the conclusion reached by the disciplinary board.' [Citation.] Here, there is such evidence, even if, as [Petitioner] contends, there is other evidence that supports his assertion of innocence." (*In re Zepeda* (2006) 141 Cal.App.4th 1493, 1500.) Likewise, given this evidence in support of the decision, whether [Petitioner] was at work at the time of the cell search is irrelevant and would not lead to a different result. (See *Brecht v. Abrahamson* (1993) 507 U.S. 619, 637 [recognizing that habeas relief will not be afforded to correct a due process violation where the error that caused it was harmless, *ie.*, it had no substantial and injurious effect on the proceedings].)

Doc. No. 11-2 at 88-89.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Any finding of guilt must be supported by "some

evidence in the record." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). The "some evidence" standard is not high; a court need only decide whether there is any evidence at all that could support the prison official's administrative decisions. *Bruce v. Ylst*, 351 F.3d 1283, 1287-88 (9th Cir. 2003). In reviewing a decision for "some evidence," courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence; rather, courts only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis. *Hill*, 472 U.S. at 455-56.

Petitioner was found guilty of Title 15, Section 3006(a) of the California Code of Regulations, which states "[i]nmates may not possess or have under their control or constructive possession any weapons . . . ." 15 Cal. Code. Reg. § 3006(a). SHO Uribe specifically found him guilty of constructive possession, which "exists where a person has knowledge of an object and control of the object or the right to control the object, even if the person has no physical contact with it." 15 Cal. Code. Reg. § 3000.

The SHO based the finding of guilt "upon the weapon being discovered inside of paper bags that were located on the floor in a common area." Doc. No. 11-2 at 16. He noted that "[i]t is the responsibility of both inmates assigned to the cell to ensure that no contraband enters the cell," and that both "weapons were readily accessible to both inmates and not in any one inmate's assigned area." *Id.* Based on the location of the weapons, the SHO found "it unlikely that [Petitioner] had no knowledge of the weapons," even though Inmate Booker "accepted ownership . . . and indicated that he had received them earlier that day around 0930 and 1000 hours" *Id.* The SHO considered Petitioner's statement that he was at work for seven hours on the day the weapons were found and did not have knowledge of their existence. *Id.* at 15. However, SHO Uribe also considered an "837C Report" filled out by Correctional Sergeant C. Imada, which indicates that Petitioner "had been released to go to medical clinic indicating that [he] came out from his cell" that day. *Id.* at 16; FAP at 7 (stating that Correctional Sergeant C. Imada "fraudulently stated that [P]etitioner had been released to [the] medical clinic during [the]

relevant time in which [the] weapon[s] w[ere] discovered"). The SHO noted that "[t]he concept of constructive possession pursuant to California Code of Regulations, Title 15, section 3006(a) holds the appellant liable for contraband contained within the area of his control" and that, in his opinion, Petitioner "was aware of weapons being inside of the cell and that it was his responsibility to ensure that his assigned area was free from contraband." Doc. No. 11-2 at 16.

Petitioner asserts that "simply finding that a weapon was found in [Petitioner's] shared living space does not automatically mean you could reasonably conclude that it was [Petitioner's] and not his cellmate's possession alone." Trav. at 3. He contends that "a reasonable jurist could conclude that if a factfinder believed Booker's testimony [that the weapons were his and Petitioner had no knowledge of them,] then some evidence to support [Petitioner's] guilt does not exist." *Id.* However, it is not the function of this Court to make its own assessment of the credibility of witnesses or re-weigh the evidence. *Hill*, 472 U.S. at 455. The only question before this Court is "whether there is any reliable evidence in the record that could support the decision reached." *Santibanez v. Havlin*, 750 F. Supp. 2d 1121, 1129 (E.D. Cal. 2010) (citing *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994); *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986)). Here, there is some evidence in the record that Petitioner had constructive possession of the weapons because the weapons were found in a common area of his cell and he had been in his cell that day. *See* Doc. No. 11-2 at 16; FAP at 7 (acknowledging that Correctional Sergeant C. Imada reported Petitioner had been in his cell during the relevant time-frame). As such, the state appellate court's decision was neither contrary to clearly established federal law nor an unreasonable determination of the facts. Accordingly, Petitioner's first ground for relief is **DENIED**.

B. <u>Right to Present Evidence</u>

In his second claim, Petitioner asserts that "[p]rison officials violated [P]etitioner's Due Process [rights] pursuant to Title 15[, Section] 3318(a)(1)(C) [of the California Code of Regulations] . . . by deeming questions to [P]etitioner's work supervisor irrelevant."

FAP at 7. Respondent argues his claim fails to state a federal claim for relief because it is based on the alleged violation of a California Administrative Code section. Ans. Mem. at 2. Even if a federal claim for relief exists, Respondent contends Petitioner was permitted to present evidence that he was at work at the time the weapons were found in his cell. *Id.* at 5. Therefore, Respondent argues the state appellate court's decision was not contrary to or an unreasonable application of clearly established federal law. *See id.*

As an initial matter, the Court notes that Petitioner's claim to relief states that his due process rights were violated by the SHO deeming Marquez's answers to Petitioner's questions irrelevant. FAP at 7. Accordingly, the Court cannot agree with Respondent's contention that "neither [Petitioner's] ground for relief nor supporting facts indicate that [this claim] is based on federal law, let alone a violation of the Constitution, laws, or treaties of the United States." *See* Ans. Mem. at 2. Accordingly, the Court will address whether Petitioner's due process claim warrants habeas relief. To do so, the Court will look through to the last reasoned state court decision to address the claim. The state appellate court order denying habeas relief states in relevant part:

> [Petitioner] also contends that he was denied his due process right to present evidence to show he was at work on the day of the search that led to discovery of the weapons.
> . . .
> " . . . Here, there is [some] evidence, even if, as [Petitioner] contends, there is other evidence that supports his assertion of innocence." (*In re Zepeda* (2006) 141 Cal.App.4th 1493, 1500.) Likewise, given this evidence in support of the decision, whether [Petitioner] was at work at the time of the cell search is irrelevant and would not lead to a different result. (See *Brecht v. Abrahamson* (1993) 507 U.S. 619, 637 [recognizing that habeas relief will not be afforded to correct a due process violation where the error that caused it was harmless, *ie.*, it had no substantial and injurious effect on the proceedings].)

Doc. No. 11-2 at 88-89.

While the full panoply of rights due to a defendant in criminal proceedings do not apply to prison disciplinary proceedings, an inmate subject to disciplinary sanctions that include the loss of good time credits must receive, among other things, an opportunity to

call witnesses and present documentary evidence where doing so "will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. However, due process does not require that all evidence be admitted. *Id.* at 566. A hearing officer may refuse the inmate's request for evidence if the evidence is irrelevant or unnecessary. *Id.*; *see Graves v. Knowles*, 231 F. App'x 670, 672 (9th Cir. 2007) (noting that an inmate "does not have the right to confidential, irrelevant, or unnecessary information"). If the prison officials deny an inmate's request to present evidence in his defense, they may be required to explain their decision, though the explanation does not have to be in writing. *Ponte v. Real*, 471 U.S. 491, 497 (1985).

Petitioner asserts that Marquez testified that Petitioner reported to work and remained there from 7:30 a.m. to 2:30 p.m. on the day Officer Leyva discovered the weapons in Petitioner's jointly occupied cell. FAP at 7; Trav. at 2, 4; *see* Doc. No. 11-2 at 18. SHO Uribe deemed these answers irrelevant. Doc. No. 11-2 at 18. In so doing, the SHO did not violate Petitioner's due process rights because the proposed testimony would have been cumulative or irrelevant and because SHO Uribe explained why the testimony was not admitted. *See Wolff*, 418 U.S. at 566; *Graves*, 231 Fed. App'x at 671-72.

At the disciplinary hearing, Petitioner stated that he "was at work for 7 hours up until the point where [Officer Leyva] found [the weapons]," and that Inmate Booker "admitted [the weapons were] his and . . . admitted [Petitioner] had no knowledge of [them]." Doc. No. 11-2 at 15. Inmate Booker also stated that Petitioner "wasn't around at the time that [he] came in possession of the weapons." *Id.* at 18. Thus, Marquez's testimony would have been cumulative because Petitioner and Inmate Booker had already testified that Petitioner was not present when Inmate Booker acquired the weapons. *See id.*; *see also* Trav. at 2. Moreover, in light of all of the other evidence against Petitioner, any error that may have resulted from SHO Uribe deeming Marquez's testimony irrelevant was harmless, as Petitioner's finding of guilt is supported by some evidence in the record. *See Brecht*, 507 U.S. at 637 (error deemed harmless on habeas

review unless it had a "substantial and injurious" effect on the verdict); *see also Hill*, 472 U.S. at 454; Doc. No. 11-2 at 16 (explaining the SHO's notes on evidence against Petitioner).

Further, SHO Uribe did not violate Petitioner's due process rights by "deeming questions to Petitioner's work supervisor irrelevant." *See* FAP at 7. "[P]rison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify . . . by making the explanation a part of the 'administrative record' in the disciplinary proceeding . . . ." *Ponte*, 471 U.S. at 497. Here, SHO Uribe explained his reasons by indicating that Marquez's answers were "[d]eemed irrelevant by SHO" in the administrative record. Doc. No. 11-2 at 18. This satisfies the due process requirement that prison officials explain their reasons for not allowing witness testimony at a disciplinary hearing. *See Ponte*, 471 U.S. at 497.

Because SHO Uribe's denial of Marquez's testimony was at most harmless error, and because SHO Uribe explained his reasons for denying the testimony, Petitioner's due process rights were not violated. *See Brecht*, 507 U.S. at 637; *Hill*, 472 U.S. at 454; *Ponte*, 471 U.S. at 497. Thus, the state court decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent and Petitioner's second ground for relief is **DENIED**.

C. *Evidentiary Hearing*

Petitioner asserts that the discrepancy between Correctional Sergeant C. Imada's statement that Petitioner had been in his cell during the relevant time-frame and Marquez's statement that Petitioner was at work requires an evidentiary hearing. FAP at 7. Petitioner claims that Marquez's testimony "would've established that [Petitioner] was at [his] work assignment from 7:30 a.m. (aprox.) to 2:30 p.m." Trav. at 2. Because Inmate Booker testified that he obtained the weapons between 9:30 a.m. and 10:00 a.m., Petitioner claims an evidentiary hearing is required to show his innocence. *Id.*

Rule 8(a) of the Rules Governing Section 2254 Cases provides that where a petition is not dismissed at a previous stage in the proceeding, the judge, after the answer,

transcripts, and record of the state court proceedings are filed, must, upon review of those proceedings, determine whether an evidentiary hearing is required. The purpose of an evidentiary hearing is to resolve the merits of a factual dispute.

Under 28 U.S.C. 2254(e)(2), as amended by AEDPA, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis supporting petitioner's claims was developed in state court. *Williams*, 529 U.S. at 431. If a factual basis was developed in the state court, Petitioner is entitled to a hearing if he establishes he "did not receive a full and fair opportunity to develop [the facts of his claim] in state court" and if "he has alleged facts that, if proven, would entitle him to habeas relief." *Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2002); *see also Insyxiengmay v. Morgan*, 403 F.3d 657, 670 (9th Cir. 2005) ("petitioner's allegations need only amount to a colorable claim"). "It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998). Section 2254 provides that district courts shall afford state court factual findings the presumption of correctness, and that the petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

If a factual basis for a particular claim was not developed in the state court, the district court must determine whether the failure to develop the factual basis of the claim in state court was attributable to the petitioner. *See Williams*, 529 U.S. at 432 (explaining that "a failure to develop the factual basis of a claim is not established unless there is a lack of due diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel"). If the failure was attributable to the petitioner, the court must deny the request for an evidentiary hearing unless the petitioner establishes one of two narrow exceptions set forth in 28 U.S.C. § 2254(e)(2), which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

> (A) the claim relies on--
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

The Court finds that a factual basis for Petitioner's claims was developed in state court. This conclusion is supported by the record, which shows that each of Petitioner's claims were brought to the attention of and adequately developed in state court. *See* Doc. No. 11-2. Upon careful consideration, the Court has also determined that Petitioner's FAP does not allege facts sufficient to entitle him to relief on either of his claims under 28 U.S.C. § 2254(d). Accordingly, Petitioner's request for an evidentiary hearing is **DENIED** because federal habeas relief is not warranted under § 2254(d) and Petitioner has not demonstrated he meets the conditions for obtaining an evidentiary hearing under § 2254(e)(2).

D.   *Certificate of Appealability*

Rule 11 of the Federal Rules Governing Section 2254 Cases states that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability is not issued unless there is "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

For the reasons set forth herein, the Court finds this standard has not been met. Petitioner has not made a substantial showing that his claims amounted to a denial of his constitutional rights, nor has he demonstrated that a reasonable jurist would find this Court's denial of his claims to be debatable. Accordingly, the Court **DECLINES** to issue a certificate of appealability as to any claims or issues raised in the FAP.

## CONCLUSION

Based on the foregoing, the Court **DENIES** the Petition for Writ of Habeas Corpus and **DENIES** Petitioner's request for an evidentiary hearing. Further, the Court **DECLINES** to issue a certificate of appealability. The Clerk of Court is instructed to enter judgment accordingly and close the case.

**IT IS SO ORDERED**.

Dated: March 12, 2018

Hon. Michael M. Anello
United States District Judge

15

16cv1947-MMA (AGS)